# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:22MJ397-1
Information associated with the cellular device assigned )
with call number (432) 308-4765 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ____Middle____ District of ____North Carolina____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☑ evidence of a crime;
  ☐ contraband, fruits of crime, or other items illegally possessed;
  ☑ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1); 846 | Possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same |
| 21 U.S.C. 843(b) | Use of a communication facility to commit a felony |

The application is based on these facts:
See attached Affidavit

  ☑ Continued on the attached sheet.
  ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Charles A. Vill
*Applicant's signature*

Charles A. Vill, Special Agent, DEA
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 10/06/2022 9:53 am

*Judge's signature*

City and state: Durham, North Carolina

The Honorable Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER: **(432) 308-4765** | Case No. 1:22MJ397-1 |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Charles Vill, a Special Agent (SA) with the Drug Enforcement Administration being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(432) 308-4765** with listed subscriber(s) ADEL MENDOZA at 1421 S WASHINGTON AVE, ODESSA, TX 79761 (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. Your Affiant is a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information

contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed as a Special Agent with the DEA since August 2016. In September 2016, I attended the DEA Academy which consisted of 20 weeks of training in conducting federal drug trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. I was assigned to the DEA Dayton Resident Office from April 2017 to January 2021. I have been assigned to the DEA Charlotte District Office since January 2021. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Georgia who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Georgia, and employed by the Cobb County Police Department from December 2011 to August 2016. During my employment with the Cobb County Police Department I was assigned to the Marietta-Cobb-Smyrna Organized Crime Task Force Intelligence Unit (MCD Intelligence). For approximately two years (2012-2014), I was assigned to the Cobb County Police Precinct 3 Morning Watch. I was then assigned to MCD Intelligence from April 2014 to August 2016. My duties included investigations of violations of the Georgia Controlled Substances Act, Murder for Hire, Extortion, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841 (conspiracy to distribute a controlled substance, possession with the intent to distribute a controlled substance, and distribution of a controlled substance) and 21 U.S.C.

2

§ 843(b) (use of a communication facility to commit a felony) have been committed, are being committed, and will be committed by FNU LNU. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are also engaged in the commission of these offenses and locations or property designed for use, intended for use, or used in committing or facilitating these crimes.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including the DEA and United States Postal Inspection Service (USPIS), is conducting a criminal investigation of FNU LNU aka "GALLO" (hereafter referred to as GALLO), Alex VILLAFUENTE, and other unknown coconspirators and aiders and abettors regarding possible violations of 21 U.S.C. §§ 846 and 841 (conspiracy to distribute a controlled substance, possession with the intent to distribute a controlled substance, and distribution of a controlled substance); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony).

8. This is an investigation into a drug trafficking organization (DTO) primarily distributing fentanyl, cocaine, and methamphetamine. GALLO is a fentanyl, cocaine, and methamphetamine broker, who resides in Mexico and directs the distribution of controlled substances across the United States as well as High Point, North Carolina, within the Middle District of North Carolina. Your affiant submits, based on the facts below, that there is probable cause to believe that (432) 308-4765 (the **Target Cell Phone**) is being used by a courier working under the direction of GALLO in furtherance of a drug trafficking conspiracy.

3

9. Since December 2021 the U.S. Postal Inspection Service (USPIS), and the DEA have been tracking and seizing suspected drug shipments coming through the USPS originating from California and being delivered to addresses throughout the Middle District of North Carolina. During this investigation Agents have cultivated a cooperating defendant (CD[1]).

10. In September 2022, Agents learned from the CD that an unidentified male, known only to the CD as "GALLO," FNU LNU aka GALLO (hereafter referred to as GALLO), has been utilizing the USPS to ship kilogram quantities of cocaine to the CD. The CD would then sell the cocaine to his/her own customers, or receive direction from GALLO to deliver the kilograms of cocaine to customers of GALLO. Once the CD received all of the drug proceeds for each shipment, GALLO would send his son Alex to pick up the drug proceeds. Alex has been identified by investigators as Alex VILLAFUENTE (hereafter referred to as VILLAFUENTE).

11. On or about September 9, 2022, GALLO notified the CD that GALLO had a kilogram of cocaine shipped via USPS to the CD. The CD immediately notified Agents. On September 12, 2022, Agents recovered the package from the USPS shipping facility in Greensboro, NC. Agents then received consent from the CD to open the package and seize any suspected cocaine. Upon opening the package agents located approximately one kilogram of white powdery substance that field tested positive for cocaine.

12. Over the following days Agents directed the CD to communicate with GALLO regarding the kilogram of cocaine. The CD communicated to GALLO that he/she was able to sell the kilogram and had the drug proceeds ready for GALLO.

---

[1] The Cooperating Defendant (CD) is facing federal charges for possession with intent to distribute cocaine, and conspiracy to possess with intent to distribute cocaine. The CD is working with law enforcement for judicial consideration on aforementioned federal charges. The CD has a no prior convictions. The CD's information has been corroborated by seizures, recorded telephone conversations, and recorded text communications.

4

13. On September 22, 2022, GALLO requested the CD meet with an unknown "friend" of GALLO's to deliver the drug proceeds. GALLO told the CD that GALLO would pay the CD $500 to meet with GALLO's friend to deliver the proceeds.

14. On September 22, 2022, Agents counted and serialized the proceeds with the CD. The CD and Agents confirmed the count as $23,510.00. This amount is the $24,000.00 that the CD owed GALLO for the kilogram of cocaine, less the $500.00 GALLO was paying the CD to deliver the proceeds.

15. At approximately 5:00 p.m. Agents met with the CD at a neutral location in Archdale, NC. Agents searched the CD and the CD vehicle to confirm the CD was not in possession of any additional cash, drugs, or weapons, then issued the purported drug proceeds to the CD.

16. At approximately 5:15 p.m. the CD sent GALLO a message on What's App stating the CD was ready. At approximately 5:35 p.m. GALLO requested the CD's location. At approximately 5:50 p.m. the CD told GALLO he/she was at 10106 S. Main St, Archdale, NC, the address of Lowe's Food.

17. At approximately 6:09 p.m. the CD received a What's App massage showing a location in Greensboro, NC from telephone number 432-308-4765 (the **Target Cell Phone**). The CD replied asking "Who's this." At approximately 6:33 p.m. the CD received a voice call through What's App from the **Target Cell Phone**, which was recorded and maintained by Agents. The user of the **Target Cell Phone** relayed to the CD that the he only spoke Spanish, then hung up the phone.

18. At approximately 6:34 p.m. the CD texted GALLO on What's App and relayed he/she received a call but the person only spoke Spanish. GALLO then responded by forwarding a pin drop that showed the location of Lowes Food at 10106 S. Main St, Archdale, NC. GALLO then texted "He is driving a jetta kind of blue."

19. At approximately 6:40 p.m. Agents had the CD drive from the neutral location to the Lowes Food parking lot. Upon arrival the CD pulled up to a blue Volkswagen Passat displaying Texas Temporary Tag 1194G71. Upon parking an Unknown Male (UM-1) exited the rear seat of the Passat and

5

entered the passenger seat of the CD vehicle. The CD distributed the purported drug proceeds to UM-1. During the exchange the CD and UM-1 had very little conversation due to a language barrier. UM-1 then exited the CD vehicle and returned to the rear seat of the Passat.

20. At approximately 6:45 p.m. the CD left the parking lot and returned to the neutral location. Agents searched the CD and CD vehicle.

21. At approximately 6:45 p.m. Agents observed UM-1 hand something to another Unknown Male (UM-2) sitting in the front passenger seat of the Passat. Agents then observed UM-2 lean forward and start making a motion toward UM-2's lap as if UM-2 was counting something.

22. At approximately 6:52 p.m. the Passat left the parking lot of Lowes Foods driven by a third unknown male (UM-3). Agents then conducted mobile surveillance as the Passat drove to the Exxon at 32 Powell Place Lane, Pittsboro, NC at approximately 7:44 p.m.

23. Upon arrival at Exxon Agents observed UM-2 and UM-3 exit the vehicle and enter the restroom in Exxon. While UM-3 was walking back to the Passat from the building Agents were able to take a close photograph of UM-3.

24. At approximately 8:15 p.m. UM-1, UM-2, and UM-3 left the Exxon in the Passat. Agents follow the Passat from Pittsboro to the area of Walnut Drive in Cary, NC.

25. Approximately 8:38 UM-3, driving the Passat, abruptly crossed the double white lines to exit off Highway 64 at the last second onto Walnut Street, Cary, NC. At that time agents were not able to safely maintain surveillance of the Passat. Surveillance Terminated.

26. On September 22, 2022, Agents issued a subpoena to T-Mobile for subscriber and call detail records for the **Target Cell Phone**. On the same date T-Mobile returned the data. Agents observed that the **Target Cell Phone** had 94 contacts with telephone number (253) 239-8013 between August 19, 2022 and September 19, 2022. Additionally (253) 239-8013 was the fourth most contacted number by the **Target Cell Phone** during that time frame.

27. Agents subsequently submitted a subpoena to AT&T for subscriber and call detail records for (253) 239-8013. Upon receiving the data from AT&T Agents observed the subscriber for (253) 239-8013 was ATANACIO HERNANDEZ at 6923 N 80TH AVE, GLENDALE, AZ 85303. Agents conducted a search of law enforcement databases for 6923 N 80th Ave, Glendale, AZ and located an identification for Camerino ATANACIO-Hernandez as a person living at this address. Agents then obtained a booking photograph of ATANACIO-Hernandez from a prior deportation in 2015 and observed ATANACIO-Hernandez appeared to be the same person as UM-3 described above.

**Photo comparison of UM-3 and Camerino ATANACIO-Hernandez**



Photograph of UM-3 from paragraph 23 above.



Photographs from 2015 deportation of Camerino ATANACIO-Hernandez.

8

28. In conclusion affiant believes based on the information outlined above that an unknown co-conspirator working under the direction of GALLO is the user of the **Target Cell Phone**. Affiant believes based on training, and experience that obtaining the GPS location of the **Target Cell Phone** will allow Agents to identify locations utilized by the drug trafficking organization to store drugs and drug proceeds, as well as identify currently unknown co-conspirators, drug customers, and drug sources of supply throughout the United States to include the Middle District of North Carolina.

29. In my training and experience, I have learned that T-Mobile is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

30. Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining

9

to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

31. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

32. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

35. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the

government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

36. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ Charles Vill
Charles Vill
Special Agent
Drug Enforcement Administration

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 6th day of October, 2022, at 9:53 a.m.

JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(432) 308-4765** with listed subscriber(s) ADEL MENDOZA at 1421 S WASHINGTON AVE, ODESSA, TX 79761 (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be Disclosed by the Provider and Seized by the Government**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.